**Opinion issued October 2, 2025.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00892-CR**

———————————

**DIETRICH JORDAN THOMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 486th District Court**
**Harris County, Texas**
**Trial Court Case No. 1637097**

---

## MEMORANDUM OPINION

Appellant was charged by indictment with murder. Tex. Penal Code § 19.02. His only defense was self-defense. Appellant was convicted of first-degree murder and sentenced to 24 years in prison. On appeal, appellant argues that the trial court erred by failing to qualify the jury under article 35.12 of the

Texas Code of Criminal Procedure and, in its charge to the jury, instructing the jury that it "should" rather than "must" acquit appellant if the jury found he acted in self-defense. We affirm.

## Background

At the time of the murder, both appellant and complainant were current or former members of the Bloods street gang. On the night of June 29, 2019, at around midnight, appellant and complainant encountered each other while they were driving, in separate cars, toward their respective homes in the Katy area. That encounter led to the two men fighting in a field adjacent to an intersection. During the fight, appellant shot complainant. Appellant then left the scene. Complainant was transported to a hospital, where he was ultimately pronounced dead.

## Jury Qualification

In his first issue, appellant argues that the trial court erred by failing to qualify the jury under article 35.12 of the Texas Code of Criminal Procedure.

### A.    Standard of Review and Applicable Law

Under article 35.12, prospective jurors must be asked by the trial court, or under its direction, whether they are qualified to vote in the county and state, whether they have ever been convicted of theft or any felony, and whether they are under indictment or legal accusation for theft or any felony. TEX. CODE CRIM. PROC. art. 35.12(a). A party may challenge for cause a prospective juror who is not

2

a qualified voter, who has been convicted of theft or any felony, or who is legally accused of theft or any felony. *Id.* art. 35.16(a)(1)-(3). If the prospective juror has been convicted or legally accused of theft or any felony, the trial court must disqualify that juror. *Id.* art. 35.19. Unless the matter was "disputed in the trial court, or unless the record affirmatively shows the contrary," we presume that the jury was properly impaneled. TEX. R. APP. P. 44.2(c)(2); *see also Sierra v. State*, No. 14-23-00803-CR, 2025 WL 630142, at *2 (Tex. App.—Houston [14th Dist.] Feb. 27, 2025, no pet.) (mem. op., not designated for publication) ("The Rules of Appellate Procedure require that we presume the jury was properly impaneled unless the record affirmatively shows otherwise.").

## B.  Analysis

In Harris County, prospective jurors are impaneled as part of a "general jury panel" for service in courts including all county district courts, and report for jury duty to a judge designated by the district judges. TEX. GOV'T CODE §§ 62.016(a), (c)-(e), (h). Here, the jury panel assigned to the trial court served as the first jury panel for the newly created 486th District Court, and the trial court commented on the record on the prospective jurors' delayed arrival from the central jury room. Appellant concedes that the qualification of the prospective jurors was not disputed in the trial court. There is also no indication in the record that the prospective jurors were not qualified in the central jury room or otherwise asked the qualifying

questions required by article 35.12 at some point off the record. Under rule 44.2(c)(2) of the Texas Rules of Appellate Procedure, appellant has thus failed to overcome the presumption that the jury was properly impaneled. TEX. R. APP. P. 44.2(c)(2) (presuming jury was properly impaneled unless matter was disputed in trial court or record affirmatively shows otherwise); *see also Rivas v. State*, No. 07-24-00152-CR, 2025 WL 942476, at \*2 (Tex. App.—Amarillo Mar. 27, 2025, pet. ref'd) (mem. op., not designated for publication) (holding that appellant failed to overcome presumption that jury was properly impaneled where record did not affirmatively show jury was not properly impaneled, noting specifically that "[n]othing in the record here suggests that this procedure [asking the qualifying questions in the central jury room] was not followed or that the prospective jurors were not otherwise asked the qualifying questions at some point off the record").

Appellant argues that we should not apply the presumption dictated by rule 44.2(c)(2) because, he contends, the Court of Criminal Appeals exceeded its rulemaking authority in adopting the rule. We need not reach that argument because, even if we were to presume that the prospective jurors were not asked the article 35.12 qualification questions, appellant has not demonstrated that any such violation affected any of his substantial rights. *See* TEX. R. APP. P. 44.2(b) ("Any [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). Appellant argues that, "[p]resumably, a

4

person under a qualifying indictment would deprive a criminal defendant of his or her Sixth Amendment right to a 'fair and impartial jury.'" But appellant cites no controlling authority for his position that a failure to ask prospective jurors the qualifying questions required by article 35.12 is a constitutional error, and we have not found any. *See Rivas*, 2025 WL 942476, at *3 ("The failure to ask prospective jurors the qualifying questions under article 35.12 is a statutory violation and not constitutional error.").

Moreover, appellant has neither alleged nor shown that any person served on the jury that convicted him who had a theft or felony conviction or was under indictment for the same. *See Sierra*, 2025 WL 630142, at *3 ("Even spotting appellant with the presumed fact that the qualification questions were not asked to the venire panel, that presumed fact does not lend us to the conclusion that any member of appellant's jury was not qualified."). Because appellant does not argue and the record does not show that any member of the jury in this case was in fact not qualified, we cannot find any violation of any substantial right. *See* TEX. R. APP. P. 44.2(b); *see also Godoy v. State*, No. 01-94-00073-CR, 1995 WL 442500, at *5 (Tex. App.—Houston [1st Dist.] July 27, 1995, no pet.) (mem. op., not designated for publication) ("if a trial court does not make the inquiries required by article 35.12, the defendant has the burden on appeal to show evidence in the record that an actual juror was disqualified for one of the reasons listed by the

5

article" (citing *Diaz v. State*, 742 S.W.2d 847, 851 (Tex. App.—Austin 1987, no pet.) (holding that, although trial court did not ask whether any member of jury panel had ever been convicted of theft, defendant was not entitled to reversal because he did not show that any juror was so disqualified))).

Because appellant has neither overcome the presumption that the prospective jurors were properly qualified nor shown that he was harmed by any such failure, we overrule appellant's first issue.

## Jury Instructions

In his second issue, appellant contends that, in its jury charge, the trial court erroneously instructed the jury that it "should" rather than "must" acquit him if it found he acted in self-defense.

## A.    Standard of Review and Applicable Law

Jury instructions inform the jury of the applicable law and how to apply it to the facts adduced at trial. *Alcoser v. State*, 663 S.W.3d 160, 164-65 (Tex. Crim. App. 2022). "When self-defense is law applicable to the case, the trial court must inform the jury under what circumstances it should acquit a defendant of an offense based on self-defense." *Id*. at 169; *see also Mendez v. State*, 545 S.W.3d 548, 556 (Tex. Crim. App. 2018) (same).

Appellate courts analyze claims of jury charge error in two steps. *See id*. at 165. First, we determine whether the charge was erroneous. *Id*. (citing *Wooten v.*

6

*State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)). If it was, then we must decide whether the appellant was harmed by the erroneous charge. *Id.* (citing *Wooten*, 400 S.W.3d at 606).

**B.    Analysis**

In its instructions to the jury, the trial court generally used "mandatory" language dictating what the jury was required to do under certain circumstances. For example, the trial court instructed the jury that, if it made certain findings, "then [it] will find the defendant guilty of murder, as charged in the indictment." It stated further that, if the jury made other findings, "then [it] will find the defendant guilty of manslaughter." The trial court instructed the jury that, if it found appellant guilty of either murder or manslaughter, but had a reasonable doubt as to which, "then [it] must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of manslaughter."

More generally, the trial court instructed the jury that: "The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant." The trial court told the jury that, "[i]f you have a reasonable doubt as to whether the defendant is guilty of any offense defined in this charge then you will acquit the defendant and say by your verdict 'Not Guilty.'" In addition, the trial court told the jury that: "In the event you have a

reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict 'Not Guilty.'"

In its instructions to the jury on appellant's self-defense defense, the trial court used what appellant characterizes as non-mandatory or permissive language that, he contends, did not dictate the jury's actions. For example, the court stated that:

- "if you find from the evidence beyond a reasonable doubt that [appellant] did shoot [complainant] with a firearm, as alleged, but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both of [complainant] it reasonably appeared to the defendant that his life or person was in danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of [complainant], and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against [complainant's] use or attempted use of unlawful deadly force, he shot [complainant], then you *should* acquit the defendant on the grounds of self-defense";

- "if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under the circumstances, then you *should* give the defendant the benefit of that doubt and say by your verdict, not guilty"; and

- "[i]f you find from the evidence beyond a reasonable doubt that at the time and place in question the defendant did not reasonably believe that he was in danger of death or serious bodily injury, or that the defendant, under the circumstances as viewed by him from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against [complainant's] use or attempted use of unlawful deadly force, then you *should* find against the defendant on the issue of self-defense."

8

(Emphasis added.) Similarly, the court stated that: "[Y]ou **may** consider all relevant facts and circumstances surrounding the death, if any, and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense, if any." (Emphasis added.)

Appellant cites the definitions of "should" in Merriam-Webster's Collegiate Dictionary as support for his position that the trial court's self-defense instructions did not require the jury to acquit appellant even if the jury found he had killed complainant in self-defense. The dictionary definitions quoted by appellant state that the word "should" can be used to express "condition"; "obligation, propriety, or expediency"; "futurity from a point of view in the past"; "what is probable or expected"; or "a request in a polite manner or to soften [a] direct statement." In the trial court's jury charge, appellant argues, the word "should" was used to express "what is probable or expected." Appellant provides no support for that assertion and does not address whether the word "should" may have been intended, or could have been interpreted, to express "obligation," another of the dictionary definitions.

In *Marshall v. State*, this Court recently considered a similar argument that a trial court had erred in using the word "should" in parts of its self-defense instructions to the jury. *See Marshall v. State*, No. 01-23-00503-CR, 2025 WL

9

1759021 (Tex. App.—Houston [1st Dist.] June 26, 2025, no pet. h.).[1] We concluded in *Marshall* that the trial court had not erred, taking into consideration factors such as the jury charge language read as a whole; how other jurisdictions have ruled in similar cases; how the Court of Criminal Appeals has used the word "should" in discussing claims of charge error, dictionary definitions of the word "should"; and the fact that the jury charge at issue in that case included (in addition to self-defense instructions similar to those at issue in this case) an instruction to the jury that, if it found that "defendant was justified in her conduct based on the law of self-defense, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'Not Guilty.'" *Id.*, 2025 WL 1759021, at *12-15.

Unlike the self-defense instructions at issue in *Marshall*, the self-defense instructions at issue in this case did not include even one instruction that used what appellant characterizes as mandatory language (e.g., "must" instead of "should"). Nevertheless, most of the factors that supported this Court's decision in *Marhsall* also weigh against a finding of error in this case. Most notably, the word "should" can be used to express obligation. *Id.*, 2025 WL 1759021, at *13-15. Indeed, Black's Law Dictionary notes that the word "should" is often interpreted by courts to mean "shall." *Shall*, BLACK'S LAW DICTIONARY (12th ed. 2024). As we noted in

---

[1] After issuing our decision in *Marshall*, we granted the appellant's motion to reconsider publication of the opinion, making it a published opinion.

10

*Marshall*, the Court of Criminal Appeals has itself used "should" as a mandatory term when discussing what instructions a trial court is obliged to give to a jury in a criminal case. *See Marshall*, 2025 WL 1759021, at *14 (citing *Alcoser*, 663 S.W.3d at 165 (stating that jury charge must include instructions informing jurors "under what circumstances they should convict" and "under what circumstances they should acquit")).

Also, the self-defense instructions at issue followed other statements that addressed directly the nature and scope of appellant's defense in a way that suggested to the jury that the self-defense instructions were mandatory. *See Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) ("In examining the charge for possible error, reviewing courts 'must examine the charge as a whole instead of a series of isolated and unrelated statements.'" (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995))). Those other statements included the following:

- "Upon the law of self-defense, you are instructed that a person *is justified in using force* against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force."

- "A person *is justified in using deadly force* against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force."

11

- "A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used *is not required to retreat before using deadly force*."

- "When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law *excuses or justifies such person in resorting to deadly force* by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack."

- "It is not necessary that there be an actual attack or attempted attack, as a person *has a right to defend his life and person from apparent danger* as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force."

(Emphasis added.)

Further, two sentences after the above instructions, the trial court instructed the jury that: "***Therefore***, if [it found] from the evidence beyond a reasonable doubt that [appellant] did shoot [complainant] with a firearm," it (a) "should acquit the defendant on the grounds of self-defense" if it found that appellant had established the elements of his self-defense defense or (b) "should give the defendant the benefit of [the] doubt and say by [its] verdict, not guilty" if it had a reasonable doubt as to whether appellant had acted in self-defense. (Emphasis added.) That instruction, in combination with the immediately preceding language

describing the nature and scope of appellant's self-defense defense, communicated to the jury that, if it had at least a reasonable doubt as to whether appellant acted in self-defense, it was not required to find appellant guilty of murder or manslaughter and was, instead, required to find appellant not guilty.

The trial court further reinforced this requirement in the paragraph that immediately followed, quoted above, instructing the jury that:

> If you find from the evidence beyond a reasonable doubt that . . . the defendant did not reasonably believe that he was in danger of death or serious bodily injury [or] . . . that the degree of force actually used by him was immediately necessary to protect himself against [complainant's] use or attempted use of unlawful deadly force, then you ***should*** find against the defendant on the issue of self-defense.

(Emphasis added.) In short, the trial court instructed the jury that, if it did not believe appellant's self-defense defense, it "should" find against him on the issue. It would be irrational for the jury to interpret that "should" instruction as permitting it to accept appellant's defense even if it did not believe the defense. In light of that instruction, it would be similarly irrational for the jury to interpret the self-defense instructions challenged by appellant as permitting it to find appellant guilty even if it believed his defense. The trial court's use of "should" in both the self-defense instructions regarding when to find appellant not guilty *and* the self-defense instruction regarding when to find him guilty thus also reinforced the mandatory nature of the challenged self-defense instructions.

13

It is unclear why the trial court here used verbs like "must" or "will" when discussing the circumstances under which the jury was required to convict appellant but switched to the verb "should" in its self-defense instructions. However, the court also used verbs like "must" and "will" when discussing more generally circumstances under which the jury was required to acquit appellant, such as if the jury had a reasonable doubt as to whether defendant was guilty. The court's charge also explained in detail the nature and scope of appellant's self-defense defense, including describing circumstances in which a person has a right to use deadly force against another. Finally, the trial court specifically instructed the jury that it should find appellant not guilty if it had at least a reasonable doubt as to whether appellant had acted in self-defense, even if it found beyond a reasonable doubt that appellant shot complainant with a firearm.

In the context of the jury charge as a whole, any rational jury would thus have concluded that the instructions regarding when it "should acquit the defendant on the grounds of self-defense," "should give the defendant the benefit of [the] doubt and say by [its] verdict, not guilty," or "should find against the defendant on the issue of self-defense" were mandatory commands, not permissive suggestions. *See Marshall*, 2025 WL 1759021, at *15 (holding that, in context of whole charge, use of "should acquit" language in some self-defense instructions was not erroneous even though "must acquit" might have been preferable). We thus hold

that, while it would have been preferable for the trial court to have used more uniform mandatory language throughout its charge, the trial court's self-defense instructions were not erroneous in the context of its jury charge as a whole. *See Vasquez*, 389 S.W.3d at 366 (stating that charge error review must be based on charge as whole).

We overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.

Amparo "Amy" Guerra
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).

15